By the Court.
This cause is here upon a petition in error from the Public Utilities Commission of Ohio. The plaintiff in error, the New York Central Railroad Company, filed its application with the Public Utilities Commission for authority to discontinue the operation of its passenger trains Nos. 23 and 24, between Toledo and Thurston, and, upon hearing and rehearing, the commission made the following finding and order:
‘ ‘ This matter comes now for decision upon the rehearing heretofore granted to the New York Central Railroad Company, Lessee of the Toledo & Ohio Central Railway, upon its application for authority to discontinue its passenger train service between Toledo, Ohio, and Thurston, Ohio, which was denied on the 26th day of May, 1931, without formal opinion.
“This is the last passenger train service upon this division. It consists of one train each way per day, leaving Toledo in the morning and returning at night. The line extends through Bucyrus, Mt. Gilead and Granville into Thurston. It is primarily a coal-hauling road.
“The passenger service is provided either by a *551 gasoline electric locomotive or by one coach and steam locomotive. 'These trains haul mail and express quite extensively and these two items have remained about the same, so far as income to the company is concerned. The passenger traffic has been falling off for years as it has for short hauls on every steam line. For many years these trains have not paid the cost of operation.
“There is also a loss accruing to the company by reason of the delay to freight shipments on this road caused by the passenger trains. There is no evidence that this division does not at normal times make money for the company, including freight and passenger service. The commission feels that 1930 is not a typical year in railroad operation and should not be used as a standard by which to gauge the amount of traffic necessary to retain service, either freight or passenger.
“It is the opinion of the commission, from the showing, that upon the return of normal business this road will again become a profitable division of the Ohio Central Lines. It is not likely that the passenger service, as it is now rendered, will ever become profitable to the road. There may be, within a year or two, some demand that will justify another sort of passenger service into these communities.
“The commission-recognizes that there is a certain portion of the traveling public that desires to ride by railroad and that a minimum obligation exists on. the part of every road holding a franchise and hauling freight, to furnish at least one passenger train each way per day over the right-of-way for those who desire to ride.
“Some sort of improved service might make this *552 run even now profitable, considering the express and mail which is carried on these trains. That is a matter within the discretion of the operating management, if it sees fit to substitute some kind of service in an attempt to increase returns.
“It is the opinion of the Commission, therefore, that these trains, one each way per day, should not be taken off and that the application of the road should be denied. But, in coming to this conclusion we recognize that the road cannot continue this operation for many years unless there is an increase in the use of the passenger service.
“We have no hesitancy in saying to the communities involved that they should show a greater activity and interest in this road and the passenger service than merely protesting against the abandonment of the same and unless there is a greater interest displayed by these communities, resulting in a greater use of the passenger trains, that upon proper showing a similar application would have to be granted at some future date. It is, therefore,
“Ordered, That this application be, and hereby the same is denied at this time, without prejudice to the company to file a new application any time after January 1, 1933.”
The record discloses that the plaintiff in error sought to support its application' for a leave to abandon its passenger service over the line in question by the testimony of its general superintendent, who testified to a considerable extent from statements that had been compiled by some other employee of the plaintiff in error from the records of the operating revenue and expense of the New York Central Railroad system, from which records an allocation of the revenue and expense to this particular line *553 was made by the process of comparison and proportion, rather than from personal knowledge and an actual check of the revenue and expense of the line in question.
While the commission in its finding does not, in terms, base its denial upon the ground that the character of the evidence was not such as to persuade it of the accuracy of the estimate of revenue and expense which had thus been credited and debited to this particular line, it might well have done so; and for that reason this court cannot say that its denial of leave was unreasonable or unlawful. The commission did find that the year 1930 was not a typical year in railroad operation and should not be used as a standard by which to gauge the amount of traffic necessary to retain service, and we concur in that conclusion.
While' it may not be the province of the Public Utilities Commission to admonish the communities served by a railroad to patronize such road in the future, and to issue a warning that unless such patronage be increased a future application to abandon will be granted, nevertheless, in view of the fact that' the commission has done so and has challenged the communities along this particular line to show their appreciation of the service afforded by the line, we are of opinion that, under the circumstances, this court ought not to deprive such communities of the opportunity, by increased patronage, to make the line self-sustaining.
The order of the commission will be affirmed.

Order affirmed.

Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.